NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-852

STATE IN THE INTEREST OF S.G.

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OPELOUSAS CITY COURT
PARISH OF ST. LANDRY, NO. JV8763
HONORABLE VANESSA HARRIS-KENNERSON, CITY JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

MICHAEL G. SULLIVAN
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Marc T. Amy, and Michael G. Sullivan, Judges.

AFFIRMED.

Rusty Ashley, II
Assistant District Attorney
Post Office Box 1999
Opelousas, Louisiana 70571
(337) 407-9111
Counsel for Appellee:
  State of Louisiana

Brandon Guillory
Attorney at Law
Post Office Box 1925
Opelousas, Louisiana 70570
(337) 351-9000
Counsel for Appellee:
  Unknown Father

**Scott Mouret**
**Dejean, Mouret & Mouret**
**115 North Court Street**
**Opelousas, Louisiana  70570**
**(337) 948-8276**
**Counsel for Appellee:**
        **S.G. (Child)**

**Hazel Coleman**
**Attorney at Law**
**1017 North Main Street, Suite B**
**Opelousas, Louisiana  70570**
**(337) 942-4355**
**Counsel for Appellant:**
        **A.G. (Mother)**

**A.G. (Mother)**
**723 Myrtle Street, #203**
**Opelousas, Louisiana  70570**
**(337) 692-4950**
**In Proper Person**

**SULLIVAN, Judge.**

Mother appeals a judgment granting guardianship of her son to her mother. For the following reasons, we affirm.

### *Facts*

S.G. was born to A.G. on January 16, 2007. On December 5, 2007, A.G.'s mother, K.G., contacted the Office of Community Services (OCS) with concerns she had for S.G.'s welfare and reported that A.G. was homeless and abusing illegal drugs, that A.G. left S.G. on a dirty mattress in a drug house, and that there were insect bite marks all over S.G.'s body. OCS contacted A.G. about K.G.'s report and scheduled a meeting with her. On December 12, 2007, after A.G. failed to appear for two meetings scheduled by the agency, OCS petitioned the trial court for an instanter order to allow it to remove S.G. from A.G.'s care and custody. The petition cited A.G.'s abuse of drugs, lack of stable housing, insect bite marks on the infant, A.G.'s inability to provide for the infant, and other specifics as support for the requested instanter order. The petition was verified by an OCS staff member. The trial court granted the instanter order and custody of S.G. was granted to the State. A continued custody hearing was set for the following day. A judgment reflecting these orders and appointing an attorney to represent A.G. in this proceeding was signed by the trial court.

The December 13, 2007 continued custody hearing was held in the trial court's chambers; no recording was made of the hearing.[1] Court minutes reflect that neither A.G. nor her attorney were present at that hearing. There is no indication in the record that either A.G. or her attorney was given notice of the hearing or that any

---

[1]This information is contained on a statement prepared by a Juvenile Deputy Clerk of Court.

attempt was made to give either of them notice of the hearing. At that hearing, the trial court ordered A.G. and her attorney to appear on January 16, 2008, to answer OCS's petition.

According to the January 16, 2008 court minutes,[2] A.G. and her attorney were present for the hearing; A.G. arrived in court while the hearing was in progress. The court minutes indicate that prior to A.G.'s arrival in court, her attorney entered a general denial to the allegations contained in the verified petition but, after her arrival in court, stipulated "that the child be declared a child in need of care on this date."

Review hearings were held on May 7, 2008, September 24, 2008, December 10, 2008, December 17, 2008, and April 22, 2009. The only transcripts in the record are for the hearings held December 10, 2008, and April 22, 2009. The May 7, 2008 minute entry states that A.G. was not present "but was notified by the agency"; it does not reflect that A.G.'s attorney was present for the hearing. The trial court continued the custody of S.G. with the State.

According to the minute entry for September 24, 2008, neither A.G. nor her attorney were present for the custody review hearing. Custody was again maintained with the State, and a review hearing was scheduled for December 10, 2008.

In a letter to the trial court dated December 8, 2008, OCS changed its recommendation from reunification of A.G. and S.G. to granting guardianship to K.G. because A.G. had not successfully completed her case plan; had not maintained employment and was unemployed on that date; had not maintained stable housing; and had tested positive for opiates and hydrocodone on November 19, 2008. According to the letter, OCS believed that due to the continuing instability of A.G.'s

---

[2]The recording of this hearing could not be transcribed because it was inaudible.

2

situation, S.G. would be placed at a high risk for abuse and neglect if he was returned to her custody and that it was in S.G.'s best interest to grant guardianship to K.G.

A.G. was present at the December 10, 2008 hearing; however, her attorney was not. The trial court reset the hearing for December 17, 2008, and ordered that A.G.'s attorney be subpoenaed for the hearing.

At the hearing held December 17, 2008, OCS recommended that custody of S.G. be given to K.G., and the trial court granted custody to K.G. as requested. A.G. and her attorney were present for this hearing. They were also present for the review hearing held April 22, 2009. At that hearing, OCS recommended that guardianship of S.G. be awarded to K.G. Documentary and testimonial evidence was introduced at the hearing. At the conclusion of the hearing, the trial court concurred with OCS's recommendation and awarded guardianship of S.G. to K.G.

A.G. filed a pro se appeal. Neither OCS nor K.G. filed briefs in response to A.G.'s appeal.

### *Assignments of Error*

A.G. claims that the instanter order was improperly issued because there was no affidavit of the petitioner, no court reporter was present when the order was issued, and no recording was made of the proceeding. She also claims she was denied due process because neither she nor her attorney were served with notice of the proceeding at which the instanter order was issued. Furthermore, A.G. claims that the continued custody hearing held December 13, 2007, was improper because no court reporter was present, no recording equipment was available, neither she nor her attorney were served with notice of the hearing, and neither she nor her attorney was present at the hearing. Lastly, A.G. asserts that the trial court's findings were

3

manifestly erroneous because there was no proof supporting OCS's allegations that S.G. was neglected or abused; therefore, she urges that the trial court had no jurisdiction to determine what was the best interest of S.G.

***Instanter Order***

In her first assignment of error, A.G. complains that the trial court issued an instanter order without holding a hearing as required by La.Ch.Code art. 410, which requires that juvenile proceedings be recorded. Instanter orders are provided for in La.Ch.Code art. 619. Article 619 (emphasis added) provides in pertinent part:

> A. (1) A peace officer, district attorney, or employee of the local child protection unit of the department may file a *verified complaint* alleging facts showing that there are reasonable grounds to believe that the *child is in need of care and that emergency removal is necessary* to secure the child's protection.
>
> (2) After the complaint has been filed, the parent is without authority to place the child with any individual or institution except the department until legal custody is returned to the parent.
>
> B. The *court shall immediately determine* whether reasonable efforts have been made by the department to prevent or eliminate the need for the child's removal, including whether the department has requested a temporary restraining order pursuant to Article 617 or a protective order pursuant to Article 618. In making and determining reasonable efforts, *the child's health and safety shall be the paramount concern.* However, the court may authorize the removal of the child even if the department's efforts have not been reasonable.
>
> C. (1) Upon presentation of the verified complaint, *the court shall immediately determine* whether emergency removal is necessary to secure the child's protection.
>
> (2) *If the court determines that the child's welfare cannot be safeguarded without removal, the court shall immediately issue a written instanter order directing that the child be placed in the provisional custody* of a suitable relative or other suitable individual capable of protecting the health and safety of the child or taken into the custody of the state. The order shall contain written findings of fact supporting the necessity for the child's removal in order to safeguard his welfare. . . . If custody is given to a suitable relative or other suitable individual, the safety plan shall be made an order of the court and shall

4

direct the provisional custodian to adhere to the conditions of the safety plan. The safety plan shall set forth conditions of contact with parents or other third parties.

Article 619 requires the trial court to make an immediate determination based on the allegations contained in a verified complaint filed by an individual designated in the article. There is no requirement for a hearing or a recording in such situations. A verified complaint was presented to the trial court, and the trial court's issuance of the instanter order complied with the requirements of Article 619. This assignment of error is without merit.

***Violations of Statutory and Due Process Requirements***

A.G. next complains that the trial court erred in holding a continued custody hearing on December 13, 2007, without a court reporter present and without recording equipment available. She asserts that her due process rights were violated because neither she nor her attorney had been provided notice of the continued custody hearing and neither was present for the hearing.

A.G. is correct that no transcript of the December 13, 2007 hearing is in the record. According to a statement prepared by the Juvenile Deputy Clerk, there was no recording of that hearing because it was held in the trial court's chambers and no recording equipment was available therein. The court minutes for that date indicate that neither A.G. nor her attorney was present for the hearing. There are no service returns in the record for A.G. and her attorney, which indicate that notice of the hearing was attempted to be served on either of them, and nothing in the record establishes that OCS notified, or attempted to notify, either A.G. or her attorney of the hearing. Accordingly, we agree that A.G.'s due process rights were violated in conjunction with these two hearings.

5

Having found that A.G. was denied due process, we must determine whether the violations warrant a reversal of the trial court's grant of legal guardianship to K.G. A.G. has not asserted that she was harmed or prejudiced as a result of her not being given notice of the December 13, 2007 hearing, and the record does not reveal any actual prejudice to A.G. Indeed, she admitted at the January 16, 2008 and April 22, 2009 hearings that she was unable to adequately care for S.G. Furthermore, A.G. reviewed and approved the case plan presented by OCS to the trial court at the January 16, 2008 hearing prior to the hearing.

"Because due process requires that a fundamentally fair procedure be followed when the State seeks to terminate the parent-child legal relationship, actions to terminate must be scrutinized very carefully." *State in the Interest of P.A.R.*, 06-423, p. 4 (La.App. 3 Cir. 10/18/06), 942 So.2d 57, 60 (quoting *State ex rel. G.J.L.,* 00-3278, p. 5 (La. 6/29/01), 791 So.2d 80, 85). This is not a proceeding to terminate A.G.'s parental rights. However, it is a proceeding for permanent placement as is termination; accordingly, we believe A.G. is entitled to due process comparable to that required in a termination proceeding. For the reasons previously discussed and those which follow, we find that, as a whole, the proceedings herein accorded A.G. fundamental fairness and due process of law and that the lack of notice she complains of does not warrant reversal of the trial court's judgment.

### Guardianship of S.G.

OCS's goal for S.G. was reunification with A.G. until December 2008, when it's goal became permanent placement with K.G. as legal guardian. At the conclusion of the December 17, 2008 hearing, OCS recommended that guardianship of S.G. be

awarded to K.G. The trial court awarded custody to K.G. as requested and set a review hearing for April 22, 2009.

Legal guardianship is one method of permanent placement. La.Ch.Code art. 603(20)(c). Permanency hearings are governed by La.Ch.Code art. 702, which requires the trial court to determine a permanent plan that is most appropriate and in the best interest of the child. La.Ch.Code art. 702(C). The trial court must also determine whether the department made reasonable efforts to reunify the child and parent or to finalize a placement in an alternative safe and permanent home. La.Ch.Code art. 702(E). The paramount concern of the court in determining a permanent plan is the child's health and safety. *Id.* The trial court must consider the child's need for continuing contact with any relative with whom he has an "established and significant relationship" as a factor in determining the "most appropriate" permanent plan that is in the child's best interest. La.Ch.Code art. 702(D).

Reunification will remain the permanent plan only if the parent is "complying with the case plan and making significant measurable progress toward achieving its goals and correcting the conditions" which caused the child to be placed in care. La.Ch.Code art. 702(C)(1). The trial court's permanent placement determination is reviewed under the manifest error standard. *State ex rel. C.M. v. Willis*, 41,908 (La.App. 2 Cir. 12/27/06), 946 So.2d 316, *writ denied*, 07-190 (La. 2/16/07), 949 So.2d 413.

A.G. had no problem with OCS's plan for S.G. until its recommendation changed from continuing custody with the State to awarding guardianship to K.G. At the December 10, 2008 hearing, she made an unsolicited statement to the trial

court about the recommended change: "[K.G.'s] been more than helpful. I'm not worried at night who, who has my child and I'm glad that my mother does" but indicated that she did not want guardianship to be awarded to her mother. She also testified at the April 22, 2009 hearing after being advised by her attorney that she did not have to testify.

During her testimony, A.G. admitted that her housing remained unstable and that she remained involved with an individual, and even lived with him at times, who was involved in drugs and criminal activity, which were prohibited by her case plan. She also testified that she "stayed" with her dad sometimes and that he was "unstable" and "unpredictable." Ultimately, A.G. agreed that her housing situation was "totally impossible . . . to place [S.G.] into" but claimed she needed more time and blamed her lack of housing on her inability to find a job. A.G. also acknowledged that she had failed to comply with the recommendations of her case plan in the approximate eighteen months she had to do so.

Reports submitted to the trial court throughout this proceeding and evidence presented at the hearings held in May, September, and December 2008 and April 2009 substantiate that A.G. was not successfully working toward completion of her case plan and was unable to care for S.G. The evidence established that A.G. has abused opiate-based pain medications for more than ten years. She has psychological problems independent of substance abuse. After administering tests and interviewing A.G., a psychologist recommended against reunification of A.G. with S.G. until she received substance abuse treatment, mental health services, parenting skills training, and anger management training, completed a reunification plan, and established a pattern of stability.

Prior to and in November 2008, A.G. tested positive for opiates. She claimed that she had a prescription for hydrocodone, an opiate. OCS instructed her that she would not qualify for substance abuse treatment until she provided proof that she had been prescribed such medication and obtained a prescription for another medication that was not an opiate. She did not submit such a prescription. A.G. completed parenting skills training; however, the facilitator reported that she was not truthful in those classes and that until she obtained substance abuse treatment and mental health services, her completion of the training was useless. A.G. consistently maintained that she attempted to find work but could not; yet, she did not submit evidence of her attempts to find work until the April 2009 hearing. The evidence she submitted established that she had worked for four to five weeks after S.G. was removed from her custody, but it did not establish that she consistently attempted to find a job between December 2007 and April 2009 as she claimed.

The only portion of the case plan that A.G. performed successfully was visitation. She regularly visited S.G. and behaved appropriately on those visits. However, there was at least one occasion she did not exercise her visitation because she was intoxicated and at least one occasion when she smelled of alcohol.

The record also establishes that OCS performed a thorough investigation to determine whether K.G. was suitable and able to care for S.G. and whether her home was appropriate for a young child. The review established that K.G. was physically able to care for S.G., that she was providing for his physical and emotional needs, and that S.G. was thriving in her care.

At the conclusion of the April 22, 2009 hearing, the trial court concurred with OCS's recommendation that guardianship of S.G. be granted to K.G., explaining:

9

[A.G.] had ample time to work her case plan. . . . I can understand your job situation. The economy is not the best right now. However, you have been involved in criminal activity. We have three reports involving you. You don't have a stable environment. You testified yourself you're from pillar to post. You have not submitted the agency with the information that [it has] requested from you. You have not submitted anything . . . regarding your employment. You have not taken the necessary steps with the Psychiatrist or the Psychologist.

By A.G.'s own admission, she had not made any "significant measurable progress on a case plan," that is, she had not altered or modified in a significant way the behavior that led to S.G.'s removal from her custody. Additionally, nothing in her actions or behavior indicated that there was "a reasonable expectation of reformation" by her. *State in Interest of L.L.Z. v. M.Y.S.,* 620 So.2d 1309, 1317 (La.1993). Importantly, the evidence established that it was in the best interest of S.G. for K.G. to be his legal guardian.

For these reasons, we find no manifest error in the trial court's permanent placement of S.G. with K.G.

### *Disposition*

The judgment of the trial court is affirmed. Costs are assessed to A.G.

**AFFIRMED.**

> This opinion is NOT DESIGNATED FOR PUBLICATION.
> Uniform Rules—Courts of Appeal, Rule 2–16.3.